**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAMN TOOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REPLIMUNE GROUP, INC., SUSHIL PATEL, and EMILY HILL,<br><br>Defendants. | Case No. 1:26-cv-13612<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ramn Toor ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Replimune Group, Inc. ("Replimune" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Replimune; and (c) review of other publicly available information concerning Replimune.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Replimune securities between  October 20, 2025 and April 10, 2026 inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Replimune purports to be a clinical-stage biotechnology company focused on novel oncolytic immunotherapies. The Company claims its "proprietary oncolytic immunotherapy product candidates are designed and intended to maximally activate the immune system against cancer." The Company's lead product candidate is RP1 (vusolimogene oderparepvec). And the Company claims its "leading clinical trial of RP1 is referred to as the IGNYTE trial, which is a multi-cohort clinical trial being conducted in collaboration with Bristol Myers Squibb Company, or BMS, under which BMS has granted us a non-exclusive, royalty-free license to, and is supplying at no cost, its anti-PD-1 therapy, nivolumab, for use in combination with RP1."

3.      On October 20, 2025, Replimune published a press release announcing that the U.S. Food and Drug Administration ("FDA") had accepted the resubmission of the Biologics License

1

Application ("BLA") for RP1 in combination with nivolumab for the treatment of advanced melanoma in patients who progress on an anti-PD-1 containing regimen. The Company also claimed that "[d]uring the past few months, Replimune has been working to address agency feedback" and that "[a]dditional information, data and analyses were included in the resubmission which will be part of the BLA review." The Company also stated that "[t]he FDA indicated this resubmission is considered to be a complete response to the complete response letter received in July 2025."

4.      On April 10, 2026, during market trading, the FDA published a Complete Response Letter ("CRL") rejecting Replimune's Biologics License Application ("BLA") for RP1 in combination with nivolumab. The FDA identified several deficiencies for each of the studies—RPL-001-16 (IGNYTE) and RP1-104 (IGNYTE-3)—submitted by Replimune and found that "the evidence as presented does not meet the evidentiary standards required for regulatory approval, and the results of the additional exploratory analyses of the RPL-001-16 data do not alter our initial conclusion that the RPL-001-16 trial is not an adequate and well-controlled clinical investigation that demonstrates substantial evidence of effectiveness." The FDA further revealed that "[t]o support resubmission of the BLA on October 9, 2025, [Replimune] provided [objective response rate] data from an early unplanned analysis" from RP1-104 which included only 40 patients, 10% of the planned enrollment of 400 patients.

5.      In the CRL the FDA further revealed that it had "clearly communicated" its "concerns with the study design in multiple FDA interactions throughout [Replimune's] development program," but that "***the study design concerns previously communicated were not***

*addressed*, and the contribution of [RP1] to the observed response rate in RPL-001-16 could not be determined."[1]

6.     On this news, the Company's share price fell $1.15 or 19.46%, before trading was halted, to close at $4.76 per share on April 10, 2026, on unusually heavy trading volume.

7.     Then, on April 10, 2026, after the market closed, the Company issued a press release discussing the FDA's response letter for the RP1 BLA. In the press release, Replimune conceded that "a randomized controlled trial was preferred" by the FDA, but also claimed that the FDA communicated that "if the data was sufficiently compelling, a single arm trial could be acceptable for consideration under accelerated approval."

8.     On this news, the Company's share price continued to fall $3.06 or 64.29%, to close at $1.70 per share on April 13, 2026, on unusually heavy trading volume.

9.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that in connection with the BLA, the study design concerns previously communicated by the FDA were not addressed; (2) that the Company had submitted data from an early unplanned analysis from RP1-104, which included only 40 patients (10% of the planned enrollment of 400 patients); (3) that, as a result, RPL-001-16 and RP1-104 both had deficiencies which were likely to cause the FDA to reject the BLA; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Ramn Toor, as set forth in the accompanying certification, incorporated by reference herein, purchased Replimune securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

4

16.     Defendant Replimune is incorporated under the laws of Delaware with its principal executive offices located in Woburn, Massachusetts. Replimune's common stock trades on the NASDAQ exchange under the symbol "REPL."

17.     Defendant Sushil Patel ("Patel") was the Company's Chief Executive Officer ("CEO") at all relevant times.

18.     Defendant Emily Hill ("Hill") was the Company's Chief Financial Officer ("CFO") at all relevant times.

19.     Defendants Patel and Hill (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Replimune purports to be a clinical-stage biotechnology company focused on novel oncolytic immunotherapies. The Company claims its "proprietary oncolytic immunotherapy product candidates are designed and intended to maximally activate the immune system against cancer." The Company's lead product candidate is RP1 (vusolimogene oderparepvec). And the

5

Company claims its "leading clinical trial of RP1 is referred to as the IGNYTE trial, which is a multi-cohort clinical trial being conducted in collaboration with Bristol Myers Squibb Company, or BMS, under which BMS has granted us a non-exclusive, royalty-free license to, and is supplying at no cost, its anti-PD-1 therapy, nivolumab, for use in combination with RP1."

**Materially False and Misleading**

**Statements Issued During the Class Period**

21.     The Class Period begins on October 20, 2025. On that day, Replimune issued a press release, announcing the FDA's acceptance of the Company's BLA Resubmission of RP1 for the Treatment of Advanced Melanoma. The press release stated, among other things, that "***[d]uring the past few months, Replimune has been working to address agency feedback. Additional information, data and analyses were included in the resubmission which will be part of the BLA review.***" Specifically, the press release stated as follows, in relevant part:

> Replimune Group, Inc. (NASDAQ: REPL), a clinical stage biotechnology company pioneering the development of novel oncolytic immunotherapies, today announced that the U.S. Food and Drug Administration (FDA) has accepted the resubmission of the Biologics License Application (BLA) for RP1 in combination with nivolumab for the treatment of advanced melanoma in patients who progress on an anti-PD-1 containing regimen. The PDUFA date set by the FDA is April 10, 2026 based on a Class II resubmission timeline.

> "We are pleased the agency has accepted the resubmission of our BLA for RP1," said Sushil Patel, Ph.D., CEO of Replimune. "RP1 plus nivolumab offers a strong risk benefit profile where there are few options for patients with advanced melanoma, who have progressed on PD-1 based therapy. We look forward to working closely with the agency to expedite this review as much as possible for patients' benefit."

> ***During the past few months, Replimune has been working to address agency feedback. Additional information, data and analyses were included in the resubmission which will be part of the BLA review.*** The FDA indicated this resubmission is considered to be a complete response to the complete response letter received in July 2025.

6

22.    On November 6, 2025, the Company issued a press release which announced earnings for the quarter ended September 30, 2025. The press release alleged that "***the FDA indicated that the IGNYTE-3 trial could potentially support approval***." The press release further reported the Company's financial results, including its financial highlights. Specifically, the press release stated as follows, in relevant part:

> The Company announced on October 20, 2025, that the U.S. Food and Drug Administration (FDA) has accepted the Biologics License Application (BLA) resubmission of RP1 for the treatment of advanced melanoma with a Prescription Drug User Fee Act (PDUFA) target action date set for April 10, 2026. The resubmission is considered by the FDA to be a complete response to the complete response letter received on July 21, 2025. ***In the Type A meeting minutes, the FDA indicated that the IGNYTE-3 trial could potentially support approval.***

> "After a collaborative dialogue and productive engagement with the FDA we are encouraged by the acceptance of our BLA resubmission for RP1 in combination with nivolumab," said Sushil Patel, Ph.D., CEO of Replimune. "We are currently partnering with the agency on the ongoing review to bring this important therapy to patients."

>          \*          \*          \*

> Net loss was $83.1 million for the fiscal second quarter ended September 30, 2025 and $53.1 million for the fiscal second quarter ended September 30, 2024.

23.    On November 6, 2025, the Company submitted its quarterly report for the period ended September 30, 2025 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The report stated the following regarding the Company's progress with its BLA for RP1, in relevant part:

> On October 20, 2025, the Company announced that the FDA had accepted the resubmission of the BLA for RP1 in combination with nivolumab for the treatment of advanced melanoma in patients who progress on anti-PD-1 containing regimen. The PDUFA date set by the FDA is April 10, 2026 based on a Class II resubmission timeline.

>          \*          \*          \*

> Our leading clinical trial of RP1 is referred to as the IGNYTE trial, which is a multi-cohort clinical trial being conducted in collaboration with Bristol Myers Squibb

Company, or BMS, under which BMS has granted us a non-exclusive, royalty-free license to, and is supplying at no cost, its anti-PD-1 therapy, nivolumab, for use in combination with RP1.

*                              *                              *

On September 2, 2025 we announced a type A meeting with the FDA had been scheduled to discuss the CRL following our submission of a briefing book addressing the points raised in the CRL, highlighting prior agreements related to the patient population, criteria for PD-1 resistance, and use of literature to support contribution of components. The briefing book also included an additional analysis of data from the BLA and addressed comments about the phase 3 confirmatory trial design raised by the FDA in the CRL. On September 18, 2025 we announced that, following the type A meeting with the FDA to discuss the CRL, which was conducted on September 16, 2025, we were evaluating feedback received during the meeting to determine our next steps and that, at that time, a path forward under the accelerated approval pathway had not been determined. ***Following the evaluation of FDA feedback and minutes from the type A meeting, we resubmitted the BLA on October 9, 2025.*** On October 20, 2025 we announced that the FDA had accepted the resubmission of the BLA for RP1 in combination with nivolumab for the treatment of advanced melanoma in patients who progress on an anti-PD-1 containing regimen. The resubmission included additional information, data and analyses that will be part of the BLA review. The FDA indicated that the resubmission is considered to be a complete response to the CRL and set a PDUFA date of April 10, 2026 based on a Class II resubmission timeline.

***We plan to interact with the FDA during the review of the resubmitted BLA*** and, if approved, intend to bring RP1 to adult patients with advanced melanoma who have previously received an anti-PD-1 containing regimen who otherwise have limited treatment options.

24.     On February 3, 2026, the Company issued a press release which announced earnings for the quarter ended December 31, 2025. The press release stated that ***"[w]e have been engaged with the FDA in the review of the BLA resubmission for RP1."*** The press release further reported the Company's financial results, including its financial highlights. Specifically, the press release stated as follows, in relevant part:

The Company's Biologics License Application (BLA) resubmission for RP1 (vusolimogene oderparepvec) in anti-PD-1 failed melanoma was accepted by the FDA in October 2025 with a Prescription Drug User Fee Act (PDUFA) target action date of April 10, 2026. Commercial readiness activities are well underway to support a potential launch, if approved.

8

\*                          \*                          \*

*"We have been engaged with the FDA in the review of the BLA resubmission for RP1,"* said Sushil Patel, Ph.D., CEO of Replimune. "Advanced melanoma patients can progress quickly and are in urgent need of safe and effective treatment options. Our team remains ready to launch RP1 with commercial supply produced and the commercial organization prepared to engage with our target accounts rapidly, assuming FDA approval."

\*                          \*                          \*

Net loss was $70.9 million for the fiscal third quarter ended December 31, 2025 and $66.3 million for the fiscal third quarter ended December 31, 2024.

25.     On February 3, 2026, the Company submitted its quarterly report for the period ended December 31, 2025 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The report stated the following regarding the Company's progress with its BLA for RP1, in relevant part:

Our leading clinical trial of RP1 is referred to as the IGNYTE trial, which is a multi-cohort clinical trial being conducted in collaboration with Bristol Myers Squibb Company, or BMS, under which BMS has granted us a non-exclusive, royalty-free license to, and is supplying at no cost, its anti-PD-1 therapy, nivolumab, for use in combination with RP1.

\*                          \*                          \*

On September 2, 2025 we announced a type A meeting with the FDA had been scheduled to discuss the CRL following our submission of a briefing book addressing the points raised in the CRL, highlighting prior agreements related to the patient population, criteria for PD-1 resistance, and use of literature to support contribution of components. The briefing book also included an additional analysis of data from the BLA and addressed comments about the phase 3 confirmatory trial design raised by the FDA in the CRL. On September 18, 2025 we announced that, following the type A meeting with the FDA to discuss the CRL, which was conducted on September 16, 2025, we were evaluating feedback received during the meeting to determine our next steps and that, at that time, a path forward under the accelerated approval pathway had not been determined. *Following the evaluation of FDA feedback and minutes from the type A meeting, we resubmitted the BLA on October 9, 2025.* On October 20, 2025 we announced that the FDA had accepted the resubmission of the BLA for RP1 in combination with nivolumab for the treatment of advanced melanoma in patients who progress on an anti-PD-1 containing regimen. *The resubmission included additional information, data and analyses that will be part of the BLA review.* The FDA indicated that the

9

resubmission is considered to be a complete response to the CRL and set a PDUFA date of April 10, 2026 based on a Class II resubmission timeline.

***We are interacting with the FDA during the review of the resubmitted BLA*** and, if approved, intend to bring RP1 to adult patients with advanced melanoma who have previously received an anti-PD-1 containing regimen who otherwise have limited treatment options. Without an approval of RP1 from this resubmitted BLA we might not be able to continue the development of RP1 for this indication, if at all, and we may be required to implement a restructuring plan and review our priorities across the RPx portfolio.

26. The above statements identified in ¶¶ 21-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that in connection with the BLA, the study design concerns previously communicated by the FDA were not addressed; (2) that the Company had submitted data from an early unplanned analysis from RP1-104, which included only 40 patients (10% of the planned enrollment of 400 patients); (3) that, as a result, RPL-001-16 and RP1-104 both had deficiencies which were likely to cause the FDA to reject the BLA; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

27. On April 10, 2026, during market trading, the FDA published a CRL rejecting Replimune's BLA for RP1 in combination with nivolumab. The FDA noted that, during its September 2025 meeting, it had given the Company "recommendations regarding use of data from the ongoing Phase 3 trial to potentially support Accelerated Approval." However, "***instead, [the Company] submitted data from an early unplanned analysis***" and "***[t]his data is insufficient to support an efficacy claim.***" The FDA noted that because the RPL-001-16 study was single-arm, it

10

was unable to isolate RP1's specific clinical contribution from that of nivolumab. The FDA stated,

in relevant part:

> *In the Type A meeting dated September 16, 2025, FDA also communicated that the response criteria used in RPL-001-16 were not consistent with RECIST v1.1 and may not be comparable to response rates reported in the historical literature. FDA provided recommendations regarding use of data from the ongoing Phase 3 trial to potentially support Accelerated Approval.*
>
> *Instead, you submitted data from an early unplanned analysis from RP1-104, representing 10% of the planned enrollment, as well as additional exploratory analyses of the RPL-001-16 data, to support BLA resubmission. This data is insufficient to support an efficacy claim.*
>
> *         *         *
>
> FDA review identified several issues in the assessment of the reported response rate and duration of response in RPL-001-16, which include application of response criteria that affect the **reliability of the reported results and their clinical meaningfulness.**
>
> *         *         *
>
> **Trial design inadequate to establish contribution of effect**
>
> RPL-001-16 was not designed to isolate the contribution of vusolimogene oderparepvec when administered in combination with nivolumab.
>
> The heterogeneity in the patient population enrolled in RPL-001-16 and lack of a well-established historical control benchmark for response rate and duration of response in a similar patient population (as discussed under FDA Comment 2) do not allow for a comparative analysis to be conducted between RPL-001-16 and the historical literature for the purposes of ascertaining nivolumab's expected monotherapy activity in this population.
>
> As noted under FDA Comment #1, because the response rate and duration of response were not reliably assessed in RPL-001-16, challenges in comparing these data to external, historical control data for the purposes establishing contribution of effect of vusolimogene oderparepvec to the combination of vusolimogene oderparepvec and nivolumab are further confounded. Thus, it remains unclear whether the observed responses in RPL-001-16 are due to nivolumab alone.
>
> Therefore, RPL-001-16 is not considered to be an adequate and well controlled clinical investigation that provides substantial evidence of effectiveness as required by the Federal Food, Drug, and Cosmetic Act (FD&C Act) Section 505(d), 21 Code of Federal Regulations (CFR) § 314.126, and Section 351 of the Public Health Service Act (PHS Act).

28. On this news, the Company's share price fell $1.15 or 19.46%, before trading was halted, to close at $4.76 per share on April 10, 2026, on unusually heavy trading volume.

29. Then, on April 10, 2026, after the market closed, the Company issued a press release discussing the FDA's response letter for the RP1 BLA. In the press release, Replimune conceded that "a randomized controlled trial was preferred" by the FDA, but also claimed that the FDA communicated that "if the data was sufficiently compelling, a single arm trial could be acceptable for consideration under accelerated approval."

30. On this news, the Company's share price continued to fall $3.06 or 64.29%, to close at $1.70 per share on April 13, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Replimune securities between October 20, 2025 and April 10, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Replimune's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Replimune shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Replimune or its transfer agent and may be notified of the

12

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Replimune; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Replimune's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Replimune's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Replimune's securities relying upon the integrity of the market price of the Company's securities and market information relating to Replimune, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Replimune's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Replimune's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Replimune's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

14

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Replimune's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Replimune, their control over, and/or receipt and/or modification of Replimune's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Replimune, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Replimune's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Replimune's securities traded at artificially inflated prices during the Class Period. On

December 8, 2025, the Company's share price closed at a Class Period high of $10.73 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Replimune's securities and market information relating to Replimune, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Replimune's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Replimune's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Replimune and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Replimune's securities was an efficient market for the following reasons, among others:

(a)     Replimune shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Replimune filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Replimune regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

16

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Replimune was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Replimune's securities promptly digested current information regarding Replimune from all publicly available sources and reflected such information in Replimune's share price. Under these circumstances, all purchasers of Replimune's securities during the Class Period suffered similar injury through their purchase of Replimune's securities at artificially inflated prices and a presumption of reliance applies.

47. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

17

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Replimune who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

49.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.      During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Replimune's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Replimune's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Replimune's financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Replimune's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Replimune and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management

19

team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Replimune's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Replimune's securities was artificially inflated during the Class Period. In ignorance of the fact

20

that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Replimune's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Replimune was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Replimune securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

21

61.     Individual Defendants acted as controlling persons of Replimune within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Replimune and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

22

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.


Dated: August 6, 2026                    **BERMAN TABACCO**

By: */s/ Patrick T. Egan*
Patrick T. Egan (BBO #637477)
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Email: pegan@bermantabacco.com

*Liaison Counsel for Plaintiff Ramn Toor*

**GLANCY PRONGAY WOLKE & ROTTER LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Plaintiff Ramn Toor*